**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTH DISTRICT OF NEW YORK**

EXO OPPORTUNITY FUND, LLC,

                 Plaintiff,                         Case No.: 1:25-cv-6337 (AS)
                                                 ECF CASE

vs.

PATRIOT RENEWABLE FUELS, LLC,
 and CHS INC.,

                 Defendants.

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

*DEFENDANTS HEREBY REQUEST ORAL ARGUMENT*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ..............................................................................................................1

FACTUAL BACKGROUND ...............................................................................................1

    The Early Adopter License Agreement .........................................................................1

    Certain Patents within the Licensed Patents Rights are Invalidated in a
        Multi-District Litigation........................................................................................4

    Defendants Terminate the Agreement ..........................................................................4

    The MDL's Invalidation of Patents within the Licensed Patent Rights is Upheld
        on Appeal ............................................................................................................6

    Plaintiff Waits More Than Six Years to Commence the Instant Action..........................6

LEGAL STANDARD...........................................................................................................7

ARGUMENT ......................................................................................................................8

I.      Plaintiff's Claims Are Time-Barred.............................................................................8

    A.     The Termination Letter is Integral to Plaintiff's Amended Complaint. .................9

II.    Plaintiff's Unjust Enrichment Claim is Precluded by the Existence of A Valid
       Contract......................................................................................................................13

CONCLUSION..................................................................................................................14

# TABLE OF AUTHORITIES

**Cases:**                                                                                                    **Page**

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009)....................................................................................................7

*Aubrey v. New Sch.*,
    624 F. Supp. 3d 403, 423 (S.D.N.Y. 2022)....................................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 555, 556 570 (2007)...................................................................................7

*Bensky v. Indyke*,
    743 F. Supp. 3d 586, 601-02 (S.D.N.Y. 2024) ...............................................................8

*Cargo Partner AG v. Albatrans, Inc.*,
    352 F.3d 41, 44 (2d Cir. 2003)..........................................................................................7

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
    516 N.E.2d 190, 193 (N.Y. 1987)...................................................................................14

*Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp.*,
    596 N.Y.S.2d 435, 437 (N.Y. App. Div. 2d Dept. 1993) ...................................................9

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42, 44, 47 (2d Cir. 1991),
    cert. denied, 503 U.S. 960 (1992) ..............................................................................8, 13

*DeLuca v. AccessIT Group, Inc.*,
    695 F. Supp. 2d 54, 59 (S.D.N.Y. 2010) .........................................................................8

*Ely-Cruikshank Co. v. Bank of Montreal*,
    615 N.E.2d 985, 986 (N.Y. 1993).....................................................................................9

*Gargano v. Morey*,
    86 N.Y.S.3d 595, 599 (N.Y. App. Div. 2d Dept. 2018) ...................................................14

*Grosz v. Museum of Mod. Art*,
    772 F. Supp. 2d 473, 477, 481, 483-488, 496, 497 (S.D.N.Y. 2010),
    *aff'd*, 403 F. App'x 575 (2d Cir. 2010)................................................................. 8, 10-13

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
    936 F.2d 759, 762 (2d Cir. 1991)...................................................................................12

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69, 72 (2d Cir. 1995)..............................................................................8, 10, 13

*Kalnit v. Eichler*,
    264 F.3d 131, 137-38 (2d Cir. 2001) ...................................................................7

*Kefalas v. Pappas*,
    210 N.Y.S.3d 146, 153 (N.Y. App. Div. 2d Dept. 2024) ....................................9

*Lear, Inc., v. Adkins*,
    385 U.S. 653 (1969) ............................................................................................5

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*,
    265 F.R.D. 106, 122-23 (S.D.N.Y. 2010) ...........................................................8

*McKenna v. Wright*,
    386 F.3d 432, 436 (2d Cir. 2004).........................................................................8

*Rothman v. Gregor*,
    220 F.3d 81, 88-89 (2d Cir. 2000) .......................................................................8

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*,
    75 F.3d 801, 808 (2d Cir. 1996)...........................................................................8

**Rules:**

Fed. R. Civ. P. 9(f) ........................................................................................................8

Fed. R. Civ. P. 12(b)(6).................................................................................1, 7, 8, 10, 15

Fed. R. Civ. P. 12(d) .....................................................................................................8

N.Y. C.P.L.R. 213(2) .....................................................................................................9

**Other:**

5 Wright & Miller's Federal Practice & Procedure § 1226 (3d ed. 2004)......................8

Defendants Patriot Renewable Fuels, LLC and CHS Inc., by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff Exo Opportunity Fund, LLC's First Amended Complaint:

## INTRODUCTION

Plaintiff EXO Opportunity Fund, as successor in interest to GS CleanTech Corporation ("GSCT"), commenced this action in August 2025. Plaintiff alleges two causes of action in its First Amended Complaint (the "FAC"): breach of contract (Count I) and unjust enrichment (Count II). Both claims are based on alleged obligations owed by Defendants Patriot Renewable Fuels, LLC ("Patriot") and CHS Inc. ("CHS") under a patent licensing agreement executed by GSCT and Patriot in December 2010 (the "Agreement"), and Defendants' termination of royalty payments under the Agreement in 2019. Since more than six years passed between Defendants' termination of royalty payments and Plaintiff's commencement of this action, Plaintiff's allegations are time-barred. The allegations set forth in the FAC—including extrinsic material relied on by Plaintiff in the FAC which the Court can consider—establish that Defendants notified Plaintiff that they were terminating the Agreement on July 22, 2019. This action was commenced on August 1, 2025. Because Plaintiff failed to file its lawsuit within the six-year statute of limitations for breach of contract claims, the FAC must be dismissed.

## FACTUAL BACKGROUND

### *The Early Adopter License Agreement*

On or about December 7, 2010, GSCT and Patriot entered into the Agreement—an Early Adopter License Agreement—under which GSCT licensed certain patent rights (the "Licensed Patent Rights") in its Corn Oil Extraction Systems ("COES") to Patriot. (FAC, ECF No. 4, ¶ 9;

*see* Declaration of Meghann Kantke ("Kantke Decl."), Ex. A.[1])  Section 1 of the Agreement

defined the Licensed Patent Rights as any:

> patents and patent applications set forth in **Schedule A [ ]** and any patents
> (including but not limited to any continuation, continued prosecution,
> continuation—in-part, division, reissue, extension, reexamination or substitution)
> that issue therefrom or otherwise claims priority thereto which cover the extraction
> of corn oil from by-products of the ethanol production process via the Licensed
> COES.

(FAC, ECF No. 4, ¶ 10; Kantke Decl., Ex. A, § 1.)  Schedule A to the Agreement expressly

identified the Licensed Patent Rights as Patent Nos. 7,601,858 ("the '858 Patent") and 7,608,729

("the '729 Patent"), as well as Patent Application No. 11/241,231 (later issued as Patent No. U.S.

Patent No. 8,008,516 ("the '516 Patent")), a continuation of the '858 Patent.  (FAC, ECF No. 4, ¶

11 n.2; Kantke Decl., Ex. A, at 9.)  As alleged in Plaintiff's FAC, the Licensed Patent Rights

included the following patents and patent applications within the '858 and '729 Patent families:

The '858 Patent Family

| Type | App. No. | Patent No. | Filing Date | Issue Date |
|---|---|---|---|---|
| Provisional | 60/602,050 | N/A | Aug. 17, 2004 | N/A |
| Main Patent | 11/122,859 | 7,601,858 | May 5, 2005 | 10/13/2009 |
| Child | 11/241,231 | 8,008,516 | Sept. 30, 2005 | 08/30/2011 |
| Child | 12/475,781 | N/A | June 1, 2009 | N/A |
| Child | 12/559,136 | 8,008,517 | Sept. 14, 2009 | 08/30/2011 |
| Child | 13/107,197 | 8,283,484 | May 13, 2011 | 10/09/2012 |
| Child | 13/450,997 | 9,212,334 | Apr. 19, 2012 | 12/15/2015 |
| Child | 14/661,369 | 10,655,083 | Mar. 18, 2015 | 05/19/2020 |

The '729 Patent Family

| Type | App. No. | Patent # | Filing Date | Issue Date |
|---|---|---|---|---|
| Provisional | 60/773,947 | N/A | Feb. 16, 2006 | N/A |
| PCT App | PCT/US07/62301 | N/A | Feb. 16, 2007 | N/A |
| Main Patent | 11/688,425 | 7,608,729 | Mar. 20, 2007 | October 27, 2009 |
| Child | 12/475,830 | N/A | June 1, 2009 | N/A |

(FAC, ECF No. 4, ¶ 12.)

---

[1] Exhibit A is a copy of the December 7, 2010 Agreement upon which Plaintiff's FAC is based.  Thus, the Court can
consider such Agreement in deciding this Motion to Dismiss.

Pursuant to the Agreement, in exchange for the right to practice the Licensed Patent Rights,

Patriot agreed to pay royalties equaling a percentage of Patriot's gross sales of corn oil extracted

using the Licensed COES.  (FAC, ECF No. 4, ¶ 13; Kantke Decl., Ex. A, §§ 2.1, 3.1.)

The Agreement provided that Patriot's royalty obligations would continue until:

(i) the termination of this Agreement; (ii) the expiration of the last to expire U.S.
patent in the Licensed Patent Rights that covers the use of the Licensed COES to
extract corn oil, or (iii) the occurrence of a Final Judgment or Determination (as
defined below) that all of the claims of all the issued United States patents within
the Licensed Patent Rights that cover the use of the Licensed COES to extract corn
oil are invalid or unenforceable.

(FAC, ECF No. 4, ¶ 14; Kantke Decl., Ex. A, § 3.1.4.)  Section 3.1.4 of the Agreement defined a

"Final Judgment or Determination" as "a final decision or order by the United States Patent and

Trademark Office or a court of competent jurisdiction that has been upheld upon an appeal from

which no further appeal may be taken or appeal periods have run."  (FAC, ECF No. 4, ¶ 14; Kantke

Decl., Ex. A, § 3.1.4.)

With respect to termination, Section 6.1 of the Agreement provided that:

the duration of the license granted under this Agreement shall commence on the
Effective Date and continue until the earlier to occur of: (i) expiration of the last to
expire U.S. patent in the Licensed Patent Rights that covers the use of the Licensed
COES to extract corn oil; (ii) an unappealed judgment prior to the Final Judgment
or the Final Judgment or Determination; or (iii), THIRTY (30) days after receipt by
Licensor of Licensee's written notification that Licensee has ceased all use of the
Licensed Know-How and Licensed Patent Rights and the date of such cessation.

(Kantke Decl., Ex. A, § 6.1.)

On June 26, 2012, GSCT and Patriot executed "Amendment No. 1 to Early Adopter

License Agreement" ("Amendment No. 1"), which changed the royalty rate under the Agreement.[2]

(FAC, ECF No. 4, ¶¶ 17-18; *see also* Kantke Decl., Ex. B, § 2.)

---

[2] The FAC states that Amendment No. 1 is attached to the FAC as Exhibit 2.  (FAC, ECF No. 4, ¶ 17.)  However, no attachments to the FAC were filed.  (*See* FAC, ECF No. 4.)  Defendants have attached a copy of Amendment No. 1 as Exhibit B to the Declaration of Meghann Kantke.  (*See* Kantke Decl., Ex. B.)

### *Certain Patents within the Licensed Patents Rights are Invalidated in a Multi-District Litigation*

Around early 2010, GSCT began to assert claims of patent infringement against parties that refused to license GSCT's patented technologies.  These lawsuits were combined into a multi-district litigation (the "MDL") before the United States District Court for the Southern District of Indiana.  (FAC, ECF No. 4, ¶¶ 8-9.)  On October 23, 2014, the district court held that some of the Patents in the '858 Patent family were invalid.  (FAC, ECF No. 4, ¶ 19.)

In June 2015, Patriot and CHS, which had acquired Patriot and assumed its obligations under the Agreement, notified GSCT that the October 23, 2014, MDL decision terminated Defendants' obligations to pay royalties.  (FAC, ECF No. 4, ¶¶ 21-22.)  GSCT responded in July 2015, claiming that Defendants' royalty obligations had not terminated as a result of the October 23, 2014, MDL decision.  (FAC, ECF No. 4, ¶ 23.)  Specifically, GSCT expressed its belief that (1) the October 23, 2014 decision in the MDL did not cover all of the patents in the Licensed Patent Rights under the Agreement; and (2) that the decision was not a final, non-appealable determination of validity or enforceability as to the claims addressed.  (FAC, ECF No. 4, ¶ 23.) GSCT also expressed that it planned on appealing the decision in the MDL.  (FAC, ECF No. 4, ¶ 23.)  Defendants continued paying royalties under the Agreement.  (FAC, ECF No. 4, ¶ 24.)

On September 15, 2016, the district court in the MDL held that GSCT's '858, '516, '517, and '484 Patents were unenforceable because of inequitable conduct by GSCT and its former counsel.  (FAC, ECF No. 4, ¶ 26.)

### *Defendants Terminate the Agreement*

On July 22, 2019, Defendants, through their counsel, sent GSCT a letter notifying GSCT that Defendants were terminating the Agreement, along with a separate patent license agreement between GSCT and Patriot's then-parent company.  ("Termination Letter," Kantke Decl., Ex. C,

at 1.[3])  Defendants informed GSCT that they were terminating the Agreement for two reasons. (Kantke Decl., Ex. C, at 1.)

First, Defendants stated that the '858, '516, '517, and '484 patents were invalid and unenforceable pursuant to the district court's September 15, 2016 decision in the MDL, and that other patents within the Licensed Patent Rights that were not part of the MDL were also invalid for the same reasons.  (Kantke Decl., Ex. C, at 1-2.)  Specifically, Defendants stated that "[b]ecause the licensed patents are invalid the [Defendants] are exercising their right to withhold royalty payments owed under the licenses and ultimately terminate the Licenses."  Defendants further explained that "[p]ursuant to relevant case law, a party that challenges the validity of a licensed patent, even if it does not bring suit, is able to withhold royalty payments until a determination on the validity of the patents is made."  (Kantke Decl., Ex. C, at 2 (citing *Lear, Inc., v. Adkins*, 385 U.S. 653 (1969)).)  Defendants indicated that, based on the MDL, as well as another lawsuit involving GSCT in a different jurisdiction, they reasonably believed that the licensed patents were not valid and stated that they would immediately cease paying royalties to GSCT.  (Kantke Decl., Ex. C, at 2.)  Defendants also stated that they expected the MDL's ruling would be upheld on appeal, at which point the licenses would terminate.  (Kantke Decl., Ex. C, at 2.)

Second, Defendants informed GSCT that, with respect to Licensed Patent Rights involving patents that were not involved in the MDL, Defendants had never practiced, and were not currently practicing, the claims involved in those patents.  (Kantke Decl., Ex. C, at 2.)  Defendants explained that "[o]nce the MDL-involved patents are finally invalidated, the remaining patents that are part of the Licensed Patent Rights are not being practiced by [Defendants].  As such, [Defendants] may further terminate the licenses according to their terms."  (Kantke Decl., Ex. C, at 2.)  Defendants

---

[3] For the reasons discussed below, the Court can and should consider the Termination Letter in deciding this Motion to Dismiss without converting it to a Motion for Summary Judgment.

provided a table with a non-exhaustive list of claim limitations that Defendants were not practicing and told GSCT that the letter served as written notice that Defendants did not use the licensed technology consistent with the termination provisions in Section 6.1 of the Agreement.  (Kantke Decl., Ex. C, at 2-3; *see also* Kantke Decl., Ex. A, § 6.1.)

In other words, Defendants made clear in the Termination Letter that they were terminating their royalty obligations under the Agreement in their entirety.  (Kantke Decl., Ex. C, at 3.)  There can be no dispute that the Termination Letter put GSCT on notice that Defendants were terminating the Agreement and would no longer be making any royalty payments under the Agreement.  By terminating their royalty obligations with respect to the patents held invalid in the MDL, and by disclaiming use of any remaining patents, there were no other Licensed Patent Rights pursuant to which Defendants owed remaining royalty obligations to GSCT.  Plaintiff does not allege that it demanded payment or otherwise challenged Defendants' termination of the Agreement at any point in the six years following the Termination Letter.

### *The MDL's Invalidation of Patents within the Licensed Patent Rights is Upheld on Appeal*

On March 2, 2020, the United States Court of Appeals for the Federal Circuit affirmed the district court's decision in the MDL that the '858, '516, '517, and '484 Patents were unenforceable. (FAC, ECF No. 4, ¶ 32.)  The Federal Circuit denied GSCT's petition for rehearing *en banc* on June 30, 2020.  (FAC, ECF No. 4, ¶ 35.)  The United States Supreme Court denied GSCT's petition for certiorari on February 22, 2021.  (FAC, ECF No. 4, ¶ 36.)

### *Plaintiff Waits More Than Six Years to Commence the Instant Action*

Even though Defendants notified GSCT that they were terminating the Agreement in July 2019, GSCT did not commence this action until August 2025.  Plaintiff filed its initial Complaint on August 1, 2025, and its Amended Complaint on August 6, 2025.  (*See* ECF Nos. 1, 4.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To be facially plausible, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). In deciding a motion to dismiss under Rule 12(b)(6), the court accepts factual allegations as true and draws reasonable inferences in the plaintiff's favor. *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003) (citing *Kalnit v. Eichler*, 264 F.3d 131, 137-38 (2d Cir. 2001)). However, the court is not required to accept legal conclusions couched as factual allegations: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" for purposes of a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

The failure to bring a claim within the statute of limitations is a proper subject of a motion to dismiss. "Timeliness 'is material when testing the sufficiency of a pleading.'" *Grosz v. Museum of Mod. Art*, 772 F. Supp. 2d 473, 477 (S.D.N.Y. 2010), *aff'd*, 403 F. App'x 575 (2d Cir. 2010) (quoting Fed. R. Civ. P. 9(f)). Thus, a party may raise a statute of limitations affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint and other permissible materials. *Id.* (citing *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); 5 Wright & Miller's Federal Practice & Procedure § 1226 (3d ed. 2004)); *see also Bensky v. Indyke*, 743 F. Supp. 3d 586, 601-02 (S.D.N.Y. 2024).

"In deciding a motion to dismiss, this Court may consider the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed, or knew about and relied upon in bringing the suit." *Grosz*, 772 F. Supp. 2d at 477 (citing *Rothman v. Gregor*, 220

F.3d 81, 88-89 (2d Cir. 2000)); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir. 1996). The court may consider extrinsic evidence presented on a motion to dismiss when it "is deemed part of the pleadings…." *DeLuca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 59 (S.D.N.Y. 2010) (quoting Fed. R. Civ. P. 12(d)) (citing *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 122-23 (S.D.N.Y. 2010)). Particularly, the court may consider extrinsic evidence in deciding a motion to dismiss, without converting it to a motion for summary judgment, when a plaintiff "chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (alteration in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992)); *see also Cortec*, 949 F.2d at 44 (A plaintiff's "failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on" a motion to dismiss).

## ARGUMENT

### I.    Plaintiff's Claims Are Time-Barred.

Plaintiff's claims should be dismissed in their entirety because they are barred by the applicable statute of limitations. New York law applies to Plaintiff's claims pursuant to a choice of law provision contained in the Agreement. (FAC, ECF No. 4, ¶ 5; Kantke Decl., Ex. A, § 10.3.) Under New York law, Plaintiff's claims for breach of contract and unjust enrichment are subject to a six-year statute of limitations. *See* N.Y. C.P.L.R. 213(2); *Kefalas v. Pappas*, 210 N.Y.S.3d 146, 153 (N.Y. App. Div. 2d Dept. 2024) (unjust enrichment claims based upon the same subject matter as breach of contract claims are subject to six-year statute of limitations for breach of contract). A breach of contract claim accrues at the time of the breach. *Ely-Cruikshank Co. v.*

*Bank of Montreal*, 615 N.E.2d 985, 986 (N.Y. 1993).  A claim for unjust enrichment accrues "upon the occurrence of the wrongful act giving rise to a duty of restitution."  *Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp.*, 596 N.Y.S.2d 435, 437 (N.Y. App. Div. 2d Dept. 1993).

Here, Plaintiff's claims are time-barred because they accrued more than six years before Plaintiff commenced this action.  Defendants provided the Termination Letter to GSCT on July 22, 2019—more than six years before Plaintiff commenced the instant action.  (*See generally* Kantke Decl., Ex. C.)  In the Termination Letter, Defendants expressly notified GSCT that they were terminating the Agreement, and, correspondingly, Defendants' royalty obligations to GSCT, on the grounds that: (1) the licensed patents involved in the MDL were invalid and unenforceable; and (2) Defendants were not practicing the patented methods of GSCT's remaining patents that were not involved in the MDL.  (Kantke Decl., Ex. C.)  Both of Plaintiff's claims are based on Defendants' discontinuance of royalty payments under the Agreement.  As such, these claims began to accrue, at the latest, when Defendants provided the Termination Letter to Plaintiff on July 22, 2019; that is, when Plaintiff received notice of Defendants' termination of the Agreement and its related royalty obligations.  The Termination Letter provided notice of Defendants' purported breach of the Agreement for purposes of Plaintiff's breach of contract claim, and provided notice of Defendants' "alleged wrongful act giving rise to the right of restitution" for purposes of Plaintiff's unjust enrichment claim.  Applying the six-year statute of limitations, Plaintiff's claims expired on July 22, 2025.  Therefore, Plaintiff's claims in the FAC are untimely.

A.    **The Termination Letter is Integral to Plaintiff's Amended Complaint.**

The Court can, and should, consider the Termination Letter in deciding this Motion to Dismiss because it is integral to Plaintiff's FAC.  On a motion to dismiss pursuant to Rule 12(b)(6), the court may consider documents that the plaintiff either possessed, or knew about and relied upon in bringing the suit such that they are integral to the complaint.  *Grosz*, 772 F. Supp. 2d at

477; *Int'l Audiotext*, 62 F.3d at 72. A document is integral to the complaint where the complaint "relies heavily upon its terms and effect," irrespective of whether it is referenced or incorporated in the complaint. *Id.* Plaintiff's entire FAC is based on Defendants' 2019 termination of the Agreement. (FAC, ECF No. 4, ¶ 28.) Although the Termination Letter is not explicitly referenced in the FAC, there can be no dispute that the Termination Letter is integral to the FAC because it is the specific manner in which Defendants terminated the Agreement (which, according to Plaintiff, constituted the breach of the Agreement underlying this action).

The court's analysis in *Grosz v. Museum of Modern Art* is instructive. There, plaintiffs, the son and daughter-in-law of a deceased anti-Nazi artist, brought suit against the Museum of Modern Art ("MoMA"), asserting claims for conversion, replevin, declaratory judgment, and constructive trust based on MoMA's alleged wrongful possession of three of the artist's paintings. 772 F. Supp. 2d at 481. MoMA moved to dismiss, arguing that plaintiffs' claims were barred by the statute of limitations. *Id.* The statute of limitations analysis centered on when plaintiffs' claims accrued pursuant to the demand-and-refusal rule. Under the demand-and-refusal rule, claims for conversion and replevin begin to accrue when an innocent purchaser of stolen goods refuses to return stolen goods after receiving such a demand from the owner. *Id.* at 483-84. The plaintiffs argued that MoMA did not refuse their demand until April 12, 2006 (an accrual date under which plaintiffs' claims would be timely), when MoMA sent a letter to plaintiffs notifying them that it was adopting its attorney's report and recommendation that the museum had no obligation to return the paintings. *Id.* at 484. Plaintiffs referenced the April 12, 2006 letter and attached it to their complaint. *Id.* at 497. MoMA, however, argued that it had refused plaintiffs' demand to return to the paintings in an earlier correspondence with plaintiffs—one not referenced in the complaint—dated July 20, 2005 (an accrual date under which plaintiffs' claims would be untimely). *Id.* at 485,

497.  The court concluded that the earlier correspondence constituted a refusal for purposes of determining the date plaintiffs' claims accrued.  *Id.* at 485-88.

On plaintiffs' motion for reconsideration, the plaintiffs argued that the court should not have considered the earlier letter submitted by MoMA on defendants' motion to dismiss without converting the motion into one for summary judgment.  772 F. Supp. 2d at 496.  The court rejected plaintiffs' argument, reasoning that the parties' correspondence—including the correspondence predating the letter referenced in plaintiffs' complaint—was integral to plaintiffs' complaint.  *Id.* Specifically, the court explained that while the statute of limitations is an affirmative defense, in causes of action for conversion against a good faith purchaser, "'demand and refusal are substantive elements' of the claim."  *Id.* (collecting cases).  Accordingly, because plaintiffs were required to plead compliance with the statute of limitations, the parties' correspondence was necessarily "integral" to the complaint and obviated the need to convert the motion into one for summary judgment.  *Id.* at 496-97.  The court further explained that plaintiffs' affirmative allegations that MoMA refused their demand in the April 12, 2006 letter did not restrict the court from considering the prior correspondence between the parties:

> "Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion." Otherwise, a plaintiff could "evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the [document] to the complaint or to incorporate it by reference."

*Id.* at 497 (alteration in original) (quoting *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991)).  Additionally, the court explained that plaintiffs "clearly relied" on the course of correspondence between the parties in its entirety when framing their complaint. *Id.*

> By affirmatively pleading that the April 12, 2006 letter was MoMA's "refusal" of their demand, Plaintiffs necessarily represented that those earlier letters did not

11

convey any "refusal." This made the correspondence between the parties "integral" to Plaintiffs' claim of conversion, specifically to the contention in their Complaint that they had complied with the statute of limitations. Plaintiffs could not evade MoMA's statute of limitations argument by ignoring the earlier letter that was unfavorable to their point of view—including especially the July 20, 2005 letter… identified as MoMA's *actual* refusal of Plaintiff's demand…."

*Id.* As such, the court concluded that plaintiffs were not entitled to reconsideration. *Id.*

Like the unreferenced, unincorporated correspondence predating the letter raised by the plaintiffs in *Grosz*, Defendants' Termination Letter is integral to Plaintiff's Amended Complaint because Plaintiff's claims are based solely on its allegation that Defendants breached the Agreement when they stopped making royalty payments. (FAC, ECF No. 4, ¶ 29.) Specifically, Plaintiff alleges that "in late 2019, without providing any reason or explanation to GSCT, Defendants ceased their royalty payments to GSCT." (FAC, ECF No. 4, ¶ 28.) By affirmatively pleading that their claims arose in "late 2019" when Defendants allegedly stopped paying Plaintiff "without providing any reason or explanation," Plaintiff "necessarily represented that" Defendants failed to provide correspondence or advance notice of their termination of the Agreement and corresponding discontinuance of royalty payments. *See Grosz*, 772 F. Supp. 2d at 497. As a result, the Termination Letter is integral to the Amended Complaint. Particularly, it is integral to Plaintiff's allegation that its claims arose when Defendants discontinued royalty payments. The July 22, 2019 Termination Letter provided clear notice to GSCT that Defendants were terminating the Agreement, and relatedly, their royalty obligations thereunder. Plaintiff cannot avoid application of the statute of limitations to bar its claims by simply ignoring the Termination Letter. *See id.*; *see also Int'l Audiotext*, 62 F.3d at 72 (when a plaintiff "'chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary

12

judgment.") (quoting *Cortec*, 949 F.2d at 47).  As such, the Court may properly consider the Termination Letter without converting Defendants' motion to dismiss to one for summary judgment.

As discussed above, Plaintiff's claims are based on Defendants' discontinuance of royalty payments under the Agreement. In the Termination Letter, Defendants expressly notified GSCT that they were terminating the Agreement, and their corresponding royalty obligations to GSCT. Therefore, Plaintiff's claims accrued, at the latest, when Defendants provided the Termination Letter to Plaintiff on July 22, 2019.  The statute of limitations therefore expired on July 22, 2025. Plaintiff did not commence this action until August 1, 2025—more than six years after the July 22, 2019, Termination Letter, and ten days after the statute of limitations expired.  Accordingly, Plaintiff's claims are time-barred and must be dismissed.

## II.    Plaintiff's Unjust Enrichment Claim is Precluded by the Existence of A Valid Contract.

Even if the Court determines that Plaintiff's breach of contract claim is not time-barred, Plaintiff's claim for unjust enrichment must nevertheless be dismissed because Defendants' alleged acts forming the basis for Plaintiff's unjust enrichment claim are governed by a valid contract.   Under New York law, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter…."  *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987); *see also Gargano v. Morey*, 86 N.Y.S.3d 595, 599 (N.Y. App. Div. 2d Dept. 2018); *Aubrey v. New Sch.*, 624 F. Supp. 3d 403, 423 (S.D.N.Y. 2022).

Here, Plaintiff's unjust enrichment claim fails because the parties' relationship—including Patriot's use of the Licensed Patent Rights and its related royalty obligations to Plaintiff—is governed by the existence of a valid contract: the Agreement.  Plaintiff alleges that the Agreement

13

is a valid and enforceable agreement under which GSCT granted Patriot licenses to certain patent rights owned by GSCT in exchange for royalty payments. (FAC, ECF No. 4, ¶¶ 10, 13.) Per Plaintiff's own allegations, the Agreement governs Patriot's use of the Licensed Patent Rights and Plaintiff's right to receive royalty payments in return. Therefore, Plaintiff's remedy for any alleged use of the Licensed Patent Rights by Defendants after discontinuing royalty payments lies in contract, not in quasi-contract. Importantly, nowhere in its Amended Complaint does Plaintiff allege that the Agreement is invalid or unenforceable, nor does it allege that Defendant disputes the validity of the Agreement. (*See generally* FAC, ECF No. 4.) As such, Plaintiff's unjust enrichment claim cannot stand as an alternative claim to its breach of contract claim. Accordingly, Plaintiff's unjust enrichment claim fails for this independent reason, and must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and dismiss Plaintiff's complaint in its entirety and with prejudice.

Dated: September 26, 2025                    WINTHROP & WEINSTINE, P.A.


By:   */s/Devon C. Holstad*
Devon C. Holstad, #5339221
Matthew R. McBride, MN #0261981
*pro hac vice forthcoming*
Nadeem W. Schwen, MN #0390502
*pro hac vice forthcoming*

225 South Sixth Street
Suite 3500
Minneapolis, Minnesota 55402
(612) 604-6400
dholstad@winthrop.com
mmcbride@winthrop.com
nschwen@winthrop.com

**Attorneys for Defendants Patriot
Renewable Fuels, LLC and CHS Inc.**

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I hereby certify that this Memorandum of Law complies with Local Rule 7.1. I further certify that this Memorandum of Law contains 4,499 words, excluding the cover page, any index, table of contents, table of authorities, signature blocks, or required certificates, but including all headings, footnotes, and quotations.


Dated: September 26, 2025                    WINTHROP & WEINSTINE, P.A.


By:   */s/Devon C. Holstad*
Devon C. Holstad, #5339221
Matthew R. McBride, MN #0261981
*pro hac vice forthcoming*
Nadeem W. Schwen, MN #0390502
*pro hac vice forthcoming*

225 South Sixth Street
Suite 3500
Minneapolis, Minnesota 55402
(612) 604-6400
dholstad@winthrop.com
mmcbride@winthrop.com
nschwen@winthrop.com

***Attorneys for Defendants Patriot Renewable Fuels, LLC and CHS Inc.***

40701547v1