**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EXO OPPORTUNITY FUND LLC; | |
| Plaintiff, | |
| vs. | Case No.: 1:25-cv-6337-AS |
| PATRIOT RENEWABLE FUELS, LLC; and CHS INC., | JURY TRIAL DEMANDED |
| Defendants. | |

**PLAINTIFF EXO OPPORTUNITY FUND LLC'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Evan W. Talley, OK Bar No. 22923
Jim V. John, OK Bar No. 33928
Jacob Oliphant, OK Bar No. 34748
**RYAN WHALEY, PLLC**
400 North Walnut Avenue
Oklahoma City, OK 73104
(405) 239-6040 (Telephone)
(405) 239-6766 (Facsimile)
etalley@ryanwhaley.com
jjohn@ryanwhaley.com
joliphant@ryanwhaley.com

**ATTORNEYS FOR PLAINTIFF
EXO OPPORTUNITY FUND, LLC**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION AND FACTUAL BACKGROUND ............................................. 1

ARGUMENT AND AUTHORITIES .................................................................... 5

    I.    LEGAL STANDARD FOR MOTIONS TO DISMISS BASED ON THE STATUTE OF LIMITATIONS ............................................................................... 5

    II.    THE JULY 22ND LETTER IS NOT "INTEGRAL" TO THE FIRST AMENDED COMPLAINT, AND THE COURT SHOULD NOT CONSIDER IN DECIDING DEFENDANTS' MOTION ...................................................................... 6

    III.    DEFENDANTS' ATTEMPTED TERMINATION OF THE EALA WAS INVALID BECAUSE THE JULY 22ND LETTER DID NOT COMPLY WITH THE NOTICE PROVISIONS OF THE EALA ................................................................ 7

    IV.    DEFENDANTS' ATTEMPTED TERMINATION OF THE EALA WAS ALSO INEFFECTIVE BECAUSE DEFENDANTS DID NOT—AND STILL DO NOT— HAVE A RIGHT TO TERMINATE THE EALA .......................................... 9

    V.    EVEN IF THE COURT FINDS THE JULY 22ND LETTER CONSITUTES AN ANTICIPATORY REPUDIATION OF DEFENDANTS' OBLIGATONS UNDER THE EALA, THE SIX YEAR STATUTE OF LIMITATIONS DID NOT BEGIN TO RUN UNTIL DEFENDANTS FAILED TO PERFORM UNDER THE EALA ...... 11

    VI.    DEFENDANTS' REPEATED NON-PAYMENT OF MONTHLY ROYALTIES DUE UNDER THE EALA CONSTITUTE SEPARATE BREACHES WHICH RESTART THE SIX-YEAR LIMITATIONS PERIOD ............................................. 12

    VII.    BECAUSE DEFENDANTS CONTEND THAT THE JULY 22ND LETTER TERMINATED THE EALA, DISMISSAL OF EXO'S UNJUST ENRICHMENT CLAIM WOULD BE PREMATURE ....................................................... 13

CONCLUSION ............................................................................................... 13

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1 ................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdul–Alim Amin v. Universal Life Ins. Co.,*
   706 F.2d 638 (5th Cir.1983) ................................................................ 6

*GS CleanTech Corporation v. Adkins Energy LLC,*
   141 S.Ct. 1377, 209 L.Ed.2d (2021) .................................................. 3, 10

*GS CleanTech Corporation v. Adkins Energy LLC,*
   951 F.3d 1310 (Fed. Cir. 2020) .......................................................... 3, 10

*ADP Investor Communication Services, Inc. v. In House Attorney Services, Inc.,*
   390 F. Supp. 2d 212 (E.D.N.Y. 2005) ................................................ 5, 13

*Ashcroft v. Iqbal,*
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ...................... 5

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ...................... 5

*Cary Oil Co., Inc. v. MG Refining and Marketing, Inc.,*
   90 F. Supp. 2d 401 (S.D.N.Y. 2000) .................................................. 4, 12

*Clement v. United Homes, LLC,*
   914 F.Supp.2d 362 (E.D.N.Y. 2012) .................................................. 6

*Dale v. Indus. Ceramics, Inc.,*
   571 N.Y.S.2d 185 (Sup. Ct. N.Y. County 1991) ................................ 8

*Dellicarri v. Hirschfield,*
   210 A.D.2d 584, 619 N.Y.S.2d 816 (Sup. Ct. 3d Dept. 1994) .............. 8

*Exchange Listing, LLC v. Inspira Technologies, Ltd.,*
   661 F. Supp. .3d 134 (S.D.N.Y. 2023) ............................................. 4, 12

*George v. Strayhorn,*
   No. 11–CV–3701 (PAC), 2014 WL 1259613 (S.D.N.Y. Mar. 24, 2014).......... 5

*Grosz v. Museum of Mod. Art,*
   772 F. Supp. 2d 473 (S.D.N.Y. 2010) ............................................... 6, 7

*Guilbert v. Gardner*,
    480 F.3d 140 (2d Cir. 2007) ............................................................................. 5, 12

*In re St. Casmir Dev. Corp.*,
    358 B.R. 24 (S.D.N.Y. 2007) ............................................................................ 2, 8

*Kuhn v. Pacific Mut. Life Ins. Co. of California*,
    37 F. Supp. 102 (S.D.N.Y. 1941) ..................................................................... 4, 11

*Lucente v. Int'l Business Machines Corp.*,
    310 F.3d 243 (2d Cir. 2002) ............................................................................. 4, 12

*Nantucket Allserve, Inc. v. Leading Brands of Canada, Inc.*,
    No. 09 Civ. 8089, 2010 WL 11712792 (S.D.N.Y. Dec. 27, 1010) ....................... 2, 8

*Ortiz v. Cornetta*,
    867 F.2d 146 (2d Cir.1989) .................................................................................. 6

*Orville v. Newski, Inc.*,
    155 A.D.2d 913, 547 N.Y.S.2d 913 (Sup. Ct. 3d Dept. 1989) ............................ 5, 12

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007) ................................................................................. 5

*Suarez v. Ingalls*,
    282 A.D.2d 599, 723 N.Y.S.2d 380 (Sup. Ct. 2d Dept. 2001) ............................... 8

## **Rules**

Local Civil Rule 7.1 ................................................................................................. 15

Plaintiff EXO Opportunity Fund LLC ("EXO") responds in opposition to Defendants' Patriot Renewable Fuels, LLC ("Patriot") and CHS Inc. ("CHS") (collectively "Defendants") motion to dismiss and memorandum of law in support thereof [Dkt. 27] ("the Motion"). In support of its opposition, EXO states as follows:

## **INTRODUCTION AND FACTUAL BACKGROUND**

Relying on materials that EXO did not include with, attach to, rely on, or reference in any way in the original Complaint [Dkt. 1] or the First Amended Complaint [Dkt. 4], Defendants seek to dismiss the First Amended Complaint based on a letter purportedly sent by Defendants' counsel to GS CleanTech Corporation ("GSCT"), EXO's predecessor-in-interest to the rights to bring the claims at issue, on July 22, 2019 ("the July 22nd Letter"). Defendants contend that the July 22nd Letter operated to terminate the Early Adopter License Agreement ("EALA") [Dkt. 28-1] and the subsequent amendment thereto [Dkt. 28-2] that same day, even though Defendants possessed no such rights to terminate the EALA at that time. Defendants argue, because the July 22nd Letter was allegedly sent more than six years prior to EXO's commencement of this action on August 1, 2025, EXO's claims against Defendants are time-barred as outside the applicable six-year statute of limitations. Defendants' motion, arguments, and reliance on the July 22nd Letter are flawed for several reasons, and the Motion should be denied.

First, the Court should not consider the July 22nd Letter, which, again, EXO did not include with or attach to the First Amended Complaint, because it is not "integral" to the First Amended Complaint, in that neither EXO nor GSCT possessed, knew of, or relied on the July 22nd Letter prior to the filing of the Motion. GSCT never even received the July 22nd Letter (*see* the concurrently-filed Declaration of David J. Winsness, GSCT's former President and Chief Technology Officer ("Winsness Decl."), ¶¶ 11–13), nor did Defendants make any representation

in their Motion, let alone provide any proof, that the July 22nd Letter was actually received by GSCT. EXO bases its breach of contract claims on the contention that "[i]n late 2019, without providing any reason or explanation to GSCT, Defendants ceased their royalty payments to GSCT" [Dkt. 4, ¶ 28], not on anything to do with the July 22nd Letter. Taking EXO's allegations as true and ignoring the July 22nd Letter because it is not "integral" to the First Amended Complaint, the Court should deny the Motion.

Second, even if the Court decides to consider the July 22nd Letter, it should still deny the Motion because the face of the letter reveals that it was sent to an address different than the address specified for notices to GSCT in the EALA. [Dkt. 28-1, p. 6; and 28-3, p. 1]. This Court has held that sending a contract termination notice to an incorrect address renders the attempt to terminate the contract invalid. *Nantucket Allserve, Inc. v. Leading Brands of Canada, Inc.*, No. 09 Civ. 8089, 2010 WL 11712792, *4 (S.D.N.Y. Dec. 27, 1010) (citing *In re St. Casmir Dev. Corp.*, 358 B.R. 24, 41 (S.D.N.Y. 2007). As such, Defendants' non-compliance with the notice provisions of the EALA are a separate basis for the Court to deny the Motion.

Third, even if the Court finds that strict compliance with those notice provisions is not required, Defendants had no right to terminate the EALA on July 22, 2019, and the attempted termination is therefore ineffective. The July 22nd Letter even acknowledges that Defendants did not have a right to terminate at that time, *e.g.* "[m]oreover, when the Federal Circuit upholds the lower court's holding that the licenses patents are invalid and unenforceable, the licenses will terminate" [Dkt. 28-3, p. 2]. This appears to be Defendants' acknowledgement of the "Final Judgment or Determination" provision of the EALA, which states:

> Licensee's obligation to pay Royalty Fees hereunder will continue until (i) the termination of this Agreement, (ii) the expiration of the last to expire U.S. patent in the Licensed Patent Rights that covers the use of the Licensed COES to extract corn oil, or (iii) the occurrence of a Final Judgment or Determination (as defined below)

> that all of the claims of all of the issued United States patents within the Licensed Patent Rights that cover the use of the Licensed COES to extract corn oil are invalid or unenforceable. ***For purposes of this Agreement, a "Final Judgment or Determination" is a final decision or order by the United States Patent and Trademark Office or a court of competent jurisdiction that has been upheld upon an appeal from which no further appeal may be taken or appeal periods have run. For avoidance of doubt, and notwithstanding anything stated herein to the contrary, in the event of a Final Judgment or Determination, Licensee shall be liable for all Royalty Fees that accrue up to the date of the unappealed judgment prior to the Final Judgment or the Final Judgment whichever is earlier.*** Licensor shall not be required to return to Licensee any Royalty Fee and/or Advance paid or otherwise owed by Licensee prior to the date of any such unappealed judgment or the Final Judgment or Determination.

[Dkt. 28-1, § 3.1.4 (emphasis added)]. The July 22nd Letter admits that the U.S. Court of Appeals for the Federal Circuit had not yet rendered its decision in GSCT's appeal, which did not occur until March 2, 2020. *GSCT v. Adkins Energy LLC*, 951 F.3d 1310 (Fed. Cir. 2020). Even when that decision came down, Defendants still did not a have right to terminate the EALA because GSCT had not yet exhausted its appellate rights, which did not occur until the Supreme Court denied GSCT's petition for writ of *certiorari* on February 22, 2021. *GSCT v. Adkins Energy LLC*, 141 S.Ct. 1377, 209 L.Ed.2d 1222 (2021). Perhaps more importantly, though, as EXO alleged in the First Amended Complaint, Defendants never possessed—and still do not possess—the right to terminate the EALA because, even before Defendants' allegedly sent the July 22nd Letter, the Licensed Patent Rights included U.S. Patent No. 9,212,334 ("the '334 Patent), which has never been rendered invalid or unenforceable, and includes at least one patent claim that "covers" the methods that Defendants use to extract corn oil. [Dkt. 4, ¶¶ 25, 37–40; Winsness Decl., ¶¶ 8–9]. Whether intentional or inadvertent, the July 22nd Letter completely ignores that the '334 Patent was included in the Licensed Patent Rights. Accordingly, Defendants' purported termination of the EALA through the July 22nd Letter was ineffective, and the Court should deny the Motion.

Fourth, even if the Court treats the July 22nd Letter as Defendants' anticipatory repudiation of its obligations under the EALA, EXO's claims are not time-barred because they were filed within six years of Defendants' first non-performance under the EALA. New York law likely does not even recognize the doctrine of anticipatory repudiation in the context of contracts that require payment of money in the future, *e.g.* license agreements that require ongoing royalty payments. *Kuhn v. Pacific Mut. Life Ins. Co. of California*, 37 F. Supp. 102, 105–06 (S.D.N.Y. 1941). Assuming *arguendo* that New York law would even recognize Defendant's attempted repudiation, GSCT actually received the July 22nd Letter, and it was a "positive and unequivocal" pronouncement of Defendants' intention to repudiate the EALA, GSCT would have had two options: (1) elect to treat the repudiation as an anticipatory breach and seek damages for breach of contract; or (2) continue to treat the contract as valid and await the designated time for performance before bringing suit. *Exchange Listing, LLC v. Inspira Technologies, Ltd.*, 661 F. Supp. .3d 134, 145 (S.D.N.Y. 2023) (citing *Lucente v. Int'l Business Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)). As GSCT was never aware of the July 22nd Letter, it clearly chose the latter option. The six-year statute of limitations thus did not begin to run until Defendants' failure to perform under the EALA, which, at the earliest, was its nonpayment of the next-due royalty payment on August 10, 2019. [Dkt. 28-1, § 3.3]. *See also Cary Oil Co., Inc. v. MG Refining and Marketing, Inc.*, 90 F. Supp. 2d 401, 412–413 (S.D.N.Y. 2000). EXO commenced this action on August 1, 2025, i.e. less than six years from August 10, 2025. Therefore, the Court should deny the Motion.

Fifth, even if the Court finds that the July 22nd Letter was proper notice to GSCT and that it served as a repudiation of Defendants' obligations under the EALA, EXO's breach of contract claims are still not barred by the six-year statute of limitations because each missed royalty payment by Defendants constitutes a separate breach of contract which carries its own or restarts

4

the six-year statute of limitations. *Guilbert v. Gardner*, 480 F.3d 140, 150 (2d Cir. 2007); and *Orville v. Newski, Inc.*, 155 A.D.2d 913, 914, 547 N.Y.S.2d 913 (Sup. Ct. 3d Dept. 1989). Therefore, each missed royalty payment by Defendants following the July 22nd Letter constitutes a separate breach, and on yet another basis, the Court should deny Defendants' motion to dismiss.

Finally, dismissal of EXO's unjust enrichment claim is improper at this time, as it has not yet been established that there is a valid and enforceable contract between GSCT and Defendants, and assuming there was, the effect of Defendants' purported termination on EXO's rights under that contract and against Defendants. *ADP Investor Communication Services, Inc. v. In House Attorney Services, Inc.*, 390 F. Supp. 2d 212, 222–23 (E.D.N.Y. 2005).

For any or all of the above reasons, the Court should deny the Motion.

## <u>ARGUMENT AND AUTHORITIES</u>

## I.   LEGAL STANDARD FOR MOTIONS TO DISMISS BASED ON THE STATUTE OF LIMITATIONS

In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and determine whether they "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). The Court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff and liberally construe the complaint. *See Roth v. Jennings,* 489 F.3d 499, 510 (2d Cir. 2007) (citation omitted).

This plausibility standard applies to motions to dismiss based on statutes of limitations. *See, e.g., George v. Strayhorn,* No. 11–CV–3701 (PAC), 2014 WL 1259613, at *2 (S.D.N.Y. Mar.

24, 2014). A motion to dismiss based on the statute of limitations may be granted only if "there is

no factual question as to whether the alleged violations occurred within the statutory period[.]"

*Clement v. United Homes, LLC,* 914 F.Supp.2d 362, 369 (E.D.N.Y. 2012) (citation omitted)

(emphasis added). "While a statute of limitations defense may be raised in a motion to dismiss ...

such a motion should not be granted unless it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief." *Ortiz v. Cornetta,* 867 F.2d

146, 148 (2d Cir.1989) (quoting *Abdul–Alim Amin v. Universal Life Ins. Co.,* 706 F.2d 638, 640

(5th Cir.1983)).

Applying this standard, the Court must deny Defendants' Motion for the following reasons.

## II.    THE JULY 22^ND^ LETTER IS NOT "INTEGRAL" TO THE FIRST AMENDED COMPLAINT, AND THE COURT SHOULD NOT CONSIDER IN DECIDING DEFENDANTS' MOTION

The Court should not even consider the July 22nd Letter, which was not attached to the

originally-filed Complaint [Dkt. 1] or First Amended Complaint [Dkt. 4]. However, Defendants,

citing *Grosz v. Museum of Mod. Art*, 772 F. Supp. 2d 473, 477 (S.D.N.Y. 2010), argue that the

Court can consider the July 22nd Letter if "the plaintiff either possessed, or knew about and relied

upon in bringing the suit such that they are integral to the complaint." Motion, ECF pp. 12–13.

GSCT never received the letter and did not "possess" it until Defendants attached it to their Motion.

GS CleanTech was also not aware that the letter was even sent. Winsness Decl., ¶¶ 11–13. In July

2019, GSCT was in the process of moving out of the Alpharetta, Georgia office, and no GSCT

staff or personnel were at that location on a day-to-day basis. *Id.*

GSCT also clearly did not rely on the July 22nd Letter in bringing suit on August 1, 2025.

Contrary to Defendants' statement in the Motion, Defendants' attempted termination of the EALA

is not the basis for breach alleged in the First Amended Complaint, which states:

> In late 2019, without providing any reason or explanation to GSCT, Defendants
> ceased their royalty payments to GSCT.

[Dkt. 4, ¶ 28]. Thus, it was Defendants' ceasing making royalty payments—not the sending of any

purported termination letter—that EXO relied on in initiating this action.[1]

      *Grosz*, a non-breach of contract case, is inapposite here. There, in analyzing whether the

plaintiff's claims for conversion, replevin, declaratory judgment, and constructive trust were

barred by the applicable statutes of limitations, the Court focused on the "demand-and-refusal

rule." 772 F. Supp. 2d at 483–84. The court determined that the correspondence the defendant

argued should be considered was "integral" to the claim because the parties' demands and refusals

contained in that correspondence were substantive elements of the claims. *Id.* at 496. That is not

the case here. The July 22nd Letter that Defendants ask this Court to consider does not contain any

element of EXO's breach of contract or unjust enrichment claims. Defendants' failure to make

royalty payments—not the sending of the letter—is the alleged basis for Defendants' breach. EXO

did not know about, possess, or rely on the July 19, 2022 Letter in initiating this action. What EXO

did know is that Defendants missed royalty payments in late 2019 and, thus, filed this action on

August 1, 2019. Therefore, the Court should refuse to consider the July 22nd Letter and deny the

Motion.

### III. DEFENDANTS' ATTEMPTED TERMINATION OF THE EALA WAS INVALID BECAUSE THE JULY 22ND LETTER DID NOT COMPLY WITH THE NOTICE PROVISIONS OF THE EALA

      Even if the Court elects to consider the July 22nd letter, Defendants' motion to dismiss

should still be denied. First, Defendants' attempted termination of EALA was ineffective because

---

[1] Defendants' Motion even acknowledges this, Motion, ECF pp. 12–13, yet still makes the specious argument that the First Amended Complaint if based on the sending of the July 22, 2019 Letter.

Case 1:25-cv-06337-AS     Document 30     Filed 10/10/25     Page 12 of 19

they sent the letter to the wrong address. This Court has found that notices of termination of contracts sent to a different address than required by the notices provision of the contract are invalid. *Nantucket Allserve, Inc. v. Leading Brands of Canada, Inc.*, No. 09 Civ. 8089, 2010 WL 11712792, *4 (S.D.N.Y. Dec. 27, 1010) (citing *In re St. Casmir Dev. Corp.*, 358 B.R. 24, 41 (S.D.N.Y. 2007); and *Dale v. Indus. Ceramics, Inc.*, 571 N.Y.S.2d 185, 186 (Sup. Ct. N.Y. County 1991)). Section 10.2 of the EALA, "Notices," states that any notice provided to GSCT (from which EXO acquired the right to bring these claims against Defendants) at the following address:

> GS CleanTech Corporation
> One Penn Plaza, Suite 1612
> New York, New York 10119
> Attention:      Edward Carroll

[Dkt. 28-1, p. 6]. Instead, Defendants, through their counsel, sent the notice to:

> GS CleanTech Corporation
> Attention: Edward Carroll
> 5950 Shiloh Road East, Suite N
> Alpharetta, GA 30005

[Dkt. 28-3, p. 1]. For this reason alone, Defendants' July 22, 2019 Letter provided invalid notice to GSCT that it was attempting to terminate the EALA.[2]

Even if strict compliance with the notice provision is not required, Defendants must still demonstrate that GSCT actually received the notice and that it was not prejudiced by Defendants' non-compliance. *Nantucket Allserve*, 2010 WL 11712792, *5 (citing *Suarez v. Ingalls*, 282 A.D.2d 599, 600, 723 N.Y.S.2d 380 (Sup. Ct. 2d Dept. 2001); and *Dellicarri v. Hirschfield*, 210 A.D.2d 584, 585, 619 N.Y.S.2d 816 (Sup. Ct. 3d Dept. 1994)). The Kantke Declaration [Dkt. 28] submitted

---

[2] Defendants perhaps attempted to send the July 22, 2019 Letter to the Alpharetta, Georgia address because that is the address to which notice was required to be sent to GSCT pursuant to what the Kantke Declaration describes as a "separate and unrelated license agreement between GSCT and Patriot's then-parent company" GTL Resource USA, Inc.

with Defendants' Motion does not state that the July 22nd Letter was received. The face of the letter indicates it was sent "Via Federal Express," but neither the Motion nor the Kantke Declaration provide any proof that Federal Express completed delivery of the letter to GSCT. As stated in the concurrently-filed Winsness Declaration, GSCT never received the July 22nd Letter. Winsness Decl., ¶¶ 11–19. EXO, i.e. GSCT's successor-in-interest to the instant claims against Defendants would most certainly be prejudiced by Defendants' non-compliance with the notice requirements of EALA if they are not enforced because the claims would potentially be time-barred, and there would be no recourse against Defendants for their at least six years of missed royalty payments.

For Defendants' failure to comply with the notice provisions of the EALA, the Court should deny Defendants' Motion.

## IV. DEFENANTS' ATTEMPTED TERMINATION OF THE EALA WAS ALSO INEFFECTIVE BECAUSE DEFENDANTS DID NOT—AND STILL DO NOT—HAVE A RIGHT TO TERMINATE THE EALA

Even if the Court finds that strict compliance with the notice provisions of the EALA is not required, Defendants had no right to terminate the EALA on July 22, 2019, and it is therefore ineffective. The July 22nd Letter even admits that Defendants did not have a right to terminate at that time, *e.g.* "[m]oreover, when the Federal Circuit upholds the lower court's holding that the licenses patents are invalid and unenforceable, the licenses will terminate" [Dkt. 28-3, p. 2]. This appears to be Defendants' acknowledgement of the "Final Judgment or Determination" provision of the EALA, which states:

> Licensee's obligation to pay Royalty Fees hereunder will continue until (i) the termination of this Agreement, (ii) the expiration of the last to expire U.S. patent in the Licensed Patent Rights that covers the use of the Licensed COES to extract corn oil, or (iii) the occurrence of a Final Judgment or Determination (as defined below) that all of the claims of all of the issued United States patents within the Licensed Patent Rights that cover the use of the Licensed COES to extract corn oil are invalid or unenforceable. ***For purposes of this Agreement, a "Final Judgment or Determination" is a final decision or order by the United States Patent and***

9

> ***Trademark Office or a court of competent jurisdiction that has been upheld upon
> an appeal from which no further appeal may be taken or appeal periods have
> run. For avoidance of doubt, and notwithstanding anything stated herein to the
> contrary, in the event of a Final Judgment or Determination, Licensee shall be
> liable for all Royalty Fees that accrue up to the date of the unappealed judgment
> prior to the Final Judgment or the Final Judgment whichever is earlier.*** Licensor
> shall not be required to return to Licensee any Royalty Fee and/or Advance paid or
> otherwise owed by Licensee prior to the date of any such unappealed judgment or
> the Final Judgment or Determination.

[Dkt. 28-1, § 3.1.4 (emphasis added)]. The July 22nd Letter recognizes that the U.S. Court of
Appeals for the Federal Circuit had not yet rendered its decision in GSCT's appeal, which did not
occur until March 2, 2020. *GSCT v. Adkins Energy LLC*, 951 F.3d 1310 (Fed. Cir. 2020). Even
when that decision came down, Defendants still did not a have right to terminate the EALA
because GSCT had not yet exhausted its appellate rights, which did not occur until the Supreme
Court denied GSCT's petition for writ of *certiorari* on February 22, 2021. *GSCT v. Adkins Energy
LLC*, 141 S.Ct. 1377, 209 L.Ed.2d 1222 (2021).

    Perhaps more importantly, though, as EXO alleged in the First Amended Complaint,
Defendants never possessed—and still do not possess—the right to terminate the EALA because,
even before Defendants' allegedly sent the July 22nd Letter, the Licensed Patent Rights included
U.S. Patent No. 9,212,334 ("the '334 Patent), which has never been rendered invalid or
unenforceable, and includes at least one patent claim that "covers" the methods that Defendants
use to extract corn oil. [Dkt. 4, ¶¶ 25, 37–40; Winsness Decl., ¶¶ 8–9]. Whether intentional or
inadvertent, the July 22nd Letter completely ignores that the '334 Patent was included in the
Licensed Patent Rights.

    By reproducing the table of patents in the Licensed Patent Rights included in the First
Amended Complaint [Dkt. 4, ¶ 12], the Motion at least implicitly acknowledges that there were
other patents in the Licensed Patent Rights in addition than those addressed in the July 22nd Letter.

[Dkt. 27, ECF p. 6]. As the Winsness Declaration lays out, based on his personal knowledge of the corn oil extraction systems and methods employed by Defendants at their facility, at least one claim of each of the '334 Patent and U.S. Pat. No. 10,655,083—neither of which has been rendered invalid or unenforceable—"cover" Defendants' corn oil extraction systems and methods. Winsness Decl., ¶¶ 8–9]. Thus, based on the existence of those patents and their inclusion of the Licensed Patent Rights, Defendants never had the right to terminate the EALA, even after the Supreme Court denied *certiorari* of the Federal Circuit's decision.

Accordingly, Defendants' purported termination of the EALA through the July 22nd Letter was ineffective, and the Court should deny the Motion.

## V. EVEN IF THE COURT FINDS THE JULY 22ND LETTER CONSITUTES AN ANTICIPATORY REPUDIATION OF DEFENDANTS' OBLIGATONS UNDER THE EALA, THE SIX YEAR STATUTE OF LIMITATIONS DID NOT BEGIN TO RUN UNTIL DEFENDANTS FAILED TO PERFORM UNDER THE EALA

If the Court treats the July 22nd Letter as Defendants' anticipatory repudiation of its obligations under the EALA, EXO's claims are not time-barred because they were filed within six years of Defendants' first non-performance under the EALA. As a threshold issue, New York law likely does not even recognize the doctrine of anticipatory repudiation in the context of contracts that require payment of money in the future, *e.g.* license agreements that require ongoing royalty payments. *Kuhn v. Pacific Mut. Life Ins. Co. of California*, 37 F. Supp. 102, 105–06 (S.D.N.Y. 1941). That alone would be reason enough for the Court to ignore the July 22nd Letter and, taking EXO's allegations in the First Amended Complaint as true, deny Defendants' Motion.

However, assuming *arguendo* that New York law would even recognize Defendants' attempted repudiation, GSCT actually received the July 22nd Letter, and it was a "positive and unequivocal" pronouncement of Defendants' intention to repudiate the EALA, GSCT would have

11

had two options: (1) elect to treat the repudiation as an anticipatory breach and seek damages for breach of contract; or (2) continue to treat the contract as valid and await the designated time for performance before bringing suit. *Exchange Listing, LLC v. Inspira Technologies, Ltd.*, 661 F. Supp. .3d 134, 145 (S.D.N.Y. 2023) (citing *Lucente v. Int'l Business Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)). As GSCT was never aware of the July 22nd Letter, it clearly chose the latter option. The six-year statute of limitations thus did not begin to run until Defendants' failure to perform under the EALA, which, at the earliest, was its nonpayment of the next-due royalty payment on August 10, 2019 [Dkt. 28-1, § 3.3]. *Cary Oil Co., Inc. v. MG Refining and Marketing, Inc.*, 90 F. Supp. 2d 401, 412–413 (S.D.N.Y. 2000) (finding that statute of limitations did not begin to run until repudiating party's non-performance under the contract). EXO commenced this action on August 1, 2025, i.e. less than six years from August 10, 2025. Therefore, the Court should deny the Motion.

## VI. DEFENDANTS' REPEATED NON-PAYMENT OF MONTHLY ROYALTIES DUE UNDER THE EALA CONSTITUTE SEPARATE BREACHES WHICH RESTART THE SIX-YEAR LIMITATIONS PERIOD

Even if the Court finds that the July 22nd Letter was proper notice to GSCT and accepts that it served as a repudiation of Defendants' obligations under the EALA, EXO's breach of contract claims are still not barred by the six-year statute of limitations because each missed royalty payment by Defendants constitutes a separate breach of contract, each of which carries its own or restarts the six-year statute of limitations. *Guilbert v. Gardner*, 480 F.3d 140, 150 (2d Cir. 2007). *See also Orville v. Newski, Inc.*, 155 A.D.2d 913, 914, 547 N.Y.S.2d 913 (Sup. Ct. 3d Dept. 1989) (finding the defendant's failures to meet its continuing obligations to make annual payments required by the contract constituted separate breaches that restarted the statute of limitations).

Therefore, each missed royalty payment by Defendants following the July 22nd Letter constitutes a separate breach and restarted the six-year statute of limitations.

On yet another basis, the Court should deny Defendants' motion to dismiss.

**VII.    BECAUSE DEFENDANTS CONTEND THAT THE JULY 22ND LETTER TERMINATED THE EALA, DISMISSAL OF EXO'S UNJUST ENRICHMENT CLAIM WOULD BE PREMATURE**

Defendants effectively claim that the July 22nd Letter terminated the contract, after which they had no ongoing contractual obligations to GSCT. Based on the above, that position is baseless, but until that issue is decided and the existence of any contract between the parties is in doubt, EXO should be permitted to plead unjust enrichment in the alternative to its breach of contract claim, and dismissal of the breach of contract claim would be premature. *ADP Investor Communication Services, Inc. v. In House Attorney Services, Inc.*, 390 F. Supp. 2d 212, 222–23 (E.D.N.Y. 2005). As such, the Court should deny that aspect of Defendants' Motion.

## <u>CONCLUSION</u>

Based on any or all of the bases raised by Plaintiff EXO Opportunity Fund LLC above, the Court should deny Defendants Patriot Renewable Fuels, LLC and CHS, Inc.'s Motion to Dismiss.

DATED: October 10, 2025                Respectfully submitted,

<u>/s/ *Evan W. Talley*</u>
EVAN W. TALLEY, OK Bar #22923 (admitted *pro hac vice* forthcoming)
JIM V. JOHN, OK Bar #33928 (admitted *pro hac vice*)
JACOB J. OLIPHANT, OK Bar #34748 (admitted *pro*)
**RYAN WHALEY**
400 North Walnut Avenue
Oklahoma City, Oklahoma 73104
(405) 239-6040

13

(405) 239-6766 FAX
etalley@ryanwhaley.com
jjohn@ryanwhaley.com
joliphant@ryanwhaley.com

**ATTORNEYS FOR PLAINTIFF**
**EXO OPPORTUNITY FUND, LLC**

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I hereby certify that this Response in Opposition to Defendants' Motion to Dismiss complies with Local Civil Rule 7.1. I further certify that this Response in Opposition to Defendants' Motion to Dismiss contains 4,339 words, excluding the cover page, any index, table of contents, table of authorities, signature blocks, or required certificates, but including all headings, footnotes, and quotations.

DATED: October 10, 2025                Respectfully submitted,


/s/ *Evan W. Talley*
EVAN W. TALLEY, OK Bar #22923 (admitted *pro hac vice* forthcoming)
JIM V. JOHN, OK Bar #33928 (admitted *pro hac vice*)
JACOB J. OLIPHANT, OK Bar #34748 (admitted *pro*)
**RYAN WHALEY**
400 North Walnut Avenue
Oklahoma City, Oklahoma 73104
(405) 239-6040
(405) 239-6766 FAX
etalley@ryanwhaley.com
jjohn@ryanwhaley.com
joliphant@ryanwhaley.com

**ATTORNEYS FOR PLAINTIFF**
**EXO OPPORTUNITY FUND, LLC**